JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WORKHORSE GROUP INC. DERIVATIVE LITIGATION | Case No.: CV 21- 04202-CJC (PVCx)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO STAY CASE [Dkt. 73] AND DENYING WITHOUT PREJUDICE DEFENDANTS' MOTIONS TO DISMISS [Dkts. 57, 58] |

I.   INTRODUCTION

The present action is one of two shareholder derivative actions, the other being *Cohen v. Hughes, et al.*, No. 2:21-cv- 8734-CJC (PVCx) ("*Cohen*"), which both arise out of a securities fraud class action, *Farrar v. Workhorse Group, Inc., et al.*, No. CV 21-02072-CJC (C.D. Cal.) (the "Securities Action"), against certain individual officers and directors of Workhorse[1] and Nominal Defendant Workhorse Group, Inc. ("Workhorse").

---

[1] Defendants in this case include directors on Workhorse's board—Raymond Chess, H. Benjamin Samuels, Gerald Budde, Harry DeMott, Michael Clark, Pamela Mader, and Jacqueline Dedo—and

The present action, *Cohen*, and the Securities Action are all before this Court. Each complaint alleges that between July 2020 and January 2021, Workhorse executives made misleading statements about (1) Workhorse's likelihood of winning a bid to supply the United States Postal Service ("USPS") with a fleet of next-generation delivery trucks; (2) the size and nature of Workhorse's "backlog" of orders for electric vehicles; and (3) Workhorse's ability to scale production of electric vehicles, all in an effort to raise the stock price and trade on insider information. Before the Court is Defendants' motion to stay the present action pending the outcome of the Securities Action. (Dkt. 64 [hereinafter "Mot."].) For the following reasons, Defendants' motion is **GRANTED**.[2]

## II.   LEGAL STANDARD

The Court's power to stay proceedings is "'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *In re Rh S'holder Derivative Litig.*, 2019 WL 580668, at *2 (N.D. Cal. Jan. 23, 2019) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). "In contemplating a stay, a court should consider (A) the possible damage which may result from the granting of a stay; (B) the hardship or inequity which a party may suffer as a result of denial of a stay; and (C) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* Courts look to "practical considerations" such as potential prejudice to the parties, simplification of issues, and judicial efficiency. *See, e.g.*, *Brenner v. Albrecht*, 2012 WL 252286, at *4 (Del. Ch. Jan. 27, 2012) (staying derivative action based on "practical considerations

---

former officers of Workhorse, including Duane Hughes (former CEO and board member), and Steve Schrader (former CFO).

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for October 17, 2022, at 1:30 p.m. is hereby vacated and off calendar.

[that] make it unduly complicated, inefficient, and unnecessary for [the action before it] to proceed"). "Courts generally stay a shareholder derivative suit until the culmination of a securities class action" when the allegations in the two actions overlap. *In re STEC, Inc., Deriv. Litig.*, 2012 WL 8978155, at *4 (C.D. Cal. Jan. 11, 2012).

## III.  DISCUSSION

Defendants argue that staying the derivative action in favor of the Securities Action will avoid prejudice to Workhorse and its directors. (Mot. at 17–20.) Plaintiffs in the present Derivative Action are prosecuting this case on behalf of Workhorse against several of its executives whom they contend breached their fiduciary duties owed to Workhorse. Workhorse is also named as a nominal defendant in this action. According to Defendants, without a stay of this action, Workhorse will be put in the unenviable position of having to defend itself in the Securities Action, alongside many of the individual defendants in this case, while simultaneously prosecuting this action, against the individual defendants in this case. Defendants also argue that a stay will simplify the issues in the Derivative Action, promote judicial economy, and minimize the risk of inconsistent rulings and judgments. (*Id.* at 20–24.) The Court agrees.

### A.  Substantially Similar Allegations Favor Staying this Action

Here, there is no question that the substantive allegations in this action overlap significantly with the Securities Action; both cases focus on Workhorse's USPS bid and the accuracy of the same set of statements that Workhorse's officers made about that bid. As Defendants detail in their motion in a side-by-side chart comparison, the allegations in the Securities Action and this action's Complaint are nearly identical. (Mot. at 12–16.) Indeed, when a company must prosecute and defend against substantially similar allegations, courts have found this reason enough to stay derivative actions in favor of

pending securities class actions. *See, e.g., In re STEC, Inc. Derivative Litig.*, 2012 WL 8978155, at *4 ("Courts generally stay a shareholder derivative suit until the culmination of a securities class action when the cases arise from the same factual allegations and the evidence in the former could jeopardize the company's defense in the latter."); *In re DaVita Inc. S'holder Deriv. Litig.*, 2018 WL3105061, at *3 (D. Del. June 25, 2018) (granting stay and agreeing that proceeding with the derivative action would be "antithetical" to defendants' defensive position in the securities action since it would force the company to "accuse its directors of violations of federal securities laws, while, at the same time, defending itself against the same allegations" in the derivative action).

### B. Defendants Would Face Prejudice Absent a Stay

There is great risk that Defendants in this case would be unduly prejudiced absent a stay. That is because the individual defendants "in th[is] derivative action [who] would be important witnesses for [Workhorse] in the securities class action," would be in the difficult position of potentially being adverse to their company in the derivative litigation with respect to the same allegations on which they are aligned with the company in the securities litigation. *Rosenblum*, 2008 WL 9396534, at *8 (identifying this tension in granting stay). This risk of prejudice is not abstract. As their motion to dismiss and answer in the Securities Action demonstrate, Workhorse and the other defendants in that action (many of whom are Defendants here) deny the substantive allegations against them. There is thus a significant risk that if Plaintiffs here were allowed to pursue those same allegations in Workhorse's name, Workhorse would be forced to take inconsistent positions on issues critical to both that action and this one, such as whether the challenged statements were false or misleading and whether the makers of those statements intended to mislead the public.

Additionally, if both actions were to proceed simultaneously, Workhorse would likely have to undertake discovery with diametrically opposed goals, putting it in the difficult and highly prejudicial position of both trying to adduce evidence for and against the same allegations. And it would put the individual Defendants in this action in the similarly difficult and prejudicial position of having to take an adversarial posture toward Workhorse with respect to allegations that Defendants and Workhorse are aligned in the Securities Action. As other courts have observed in granting stays under similar circumstances, the individual Defendants here "are likely witnesses in both cases, but [plaintiff] must attempt to undermine their credibility while the Company presumably will attempt to rely on their veracity. The potential for such conflicts . . . creates a significant risk that prosecution of [plaintiff's] case will prejudice [the Company]." *Brenner*, 2012 WL 252286, at *6; *Breault v. Folino*, 2002 WL 31974381, at *2 (C.D. Cal. Mar. 15, 2002) (identifying same issue); *In re Wynn*, 2019 WL 1429526, at *2 (litigating both derivative and securities actions simultaneously "would require Plaintiffs [in the derivative action] … to attack the credibility of witnesses also named as defendants in that action [which] could undermine [the company's] defense of the securities class action").

### C. Staying this Action Will Promote Judicial Economy and Efficiency

A stay here will also promote judicial economy and efficiency. Again, there is substantial overlap in the allegations between the Securities Action and this Derivative Action. Resolving the Securities Action may render some, if not most, of the issues here moot. *See In re Rh S'holder Derivative Litig.*, 2019 WL 580668, at *4 (stay warranted where resolution of claims in a parallel securities action "will simplify issues, proof, and questions of law in the Derivative Action and will therefore help preserve judicial resources and promote the orderly course of justice") (internal citation omitted). For instance, if this Court or a jury determines in the Securities Action that no challenged

statement in that action was false, misleading, or material, such a finding may eliminate Plaintiffs' claims here given the overlapping challenged statements.

Moreover, this is the appropriate time to stay this action. This case is still in its early stages, while the Securities Action has progressed further into discovery. Granting a stay now would prevent Workhorse and overlapping defendants from having to expend significant resources to carry out what are likely to be duplicative and inefficient proceedings. *See In re Rh S'holder Deriv. Litig.*, 2019 WL 580668, at *4 (staying derivative case early in litigation in favor of securities class action in part where doing so would preserve judicial resources "and promote the orderly course of justice"); *Janklow on Behalf of Stericycle, Inc. v. Alutto*, 2018 WL 6499869, at *2 (D. Del. Dec. 11, 2018) (finding that promoting judicial economy would weigh in favor of a stay because the derivative litigation, unlike the Securities Class Action, "is in its infancy, and the Court has not yet directed its scarce resources to the merits of this dispute"); *Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.*, 2008 WL 11409571, at *5 (C.D. Cal. Mar. 7, 2008) (granting a motion to stay where the issue of liability would be determined by the earlier-filed action and it would "make[] no sense to expend time or resources litigating those matters pending receipt of the Federal Circuit's decision"); *Rosenblum*, 2008 WL 9396534, at *8 (stay warranted because it "would preserve judicial resources, since the allegations, issues and parties in the two lawsuits substantially overlap").

### D. Staying this Case Would Avoid the Risk of Inconsistent Rulings or Judgments

A stay would also avoid the possibility of inconsistent obligations, rulings, or judgments. *See In re First Solar Derivative Litig.*, 2012 WL 6570914, at *2 (D. Ariz. Dec. 17, 2012) (staying derivative action in deference to securities class action in part because "[b]oth suits involve the same public statements and disclosures"); *In re STEC, Inc. Derivative Litig.*, 2012 WL 8978155, at *6 (granting stay of derivative action

pending securities action in part because "the stay will obviate the threat of conflicting outcomes in the cases."). The risk of inconsistent rulings or judgments is not remote given that Workhorse is likely to be on opposite sides of the same or similar issues if both actions were to proceed simultaneously, which raises the possibility that it will be subject to competing or conflicting obligations and rulings. And to the extent Plaintiffs in this case are entitled to a jury trial on some of their claims, there is still a risk of inconsistent factual findings by a jury that support staying this case. *In re STEC, Inc. Derivative Litig.*, 2012 WL 8978155, at *8 ("Two juries, considering the same evidence and hearing testimony could reach opposite or conflicting results. Accordingly, a stay would help reduce the likelihood of conflicting outcomes.").

### E. A Stay Will Not Unduly Prejudice Plaintiffs

There is also little risk of undue prejudice to the Plaintiffs in this case. Due to the substantial overlap between the actions, the evidence and testimony the plaintiffs in the Securities Action develop in the future will benefit Plaintiffs in this case. That is because when "the factual bases of the two actions overlap considerably, the Securities Class Action plaintiffs likely [will seek] evidence that will be useful to the plaintiffs in the Derivative Action" and relevant evidence will be preserved. *In re Rh S'holder Deriv. Litig.*, 2019 WL 580668, at *3. Any risk of delaying the discovery process is also "mitigate[d]" by the "same practical consideration of overlapping allegations that renders simultaneous prosecution of both cases unduly complicated, inefficient, and unnecessary." *Brenner*, 2012 WL 252286, at *6.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to stay this action is **GRANTED**. Defendants have also filed motions to dismiss. (Dkts. 57, 58.) Those motions are

**DENIED WITHOUT PREJUDICE** to being refiled as appropriate after the stay has been lifted.

DATED: October 3, 2022

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE